<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| LOTTOTRON, INC., | : | Civil No. 09-4942 (FSH) |
| | : | |
| Plaintiff, | : | |
| | : | <u>**ORDER & OPINION**</u> |
| v. | : | |
| | : | |
| EH NEW VENTURES INC., et al. | : | Date: November 15, 2010 |
| | : | |
| Defendants. | : | |

**<u>HOCHBERG, District Judge</u>:**

This matter comes before the Court on Defendant Interactive Systems Inc., N.V.'s Motion for Summary Judgment of Non-Infringement. The Court has reviewed the parties' submissions and heard oral argument on the motion on November 1, 2010.

<u>**BACKGROUND**</u>

Plaintiff Lottotron, Inc. is the owner by assignment of U.S. Patent No. 5,921,865, entitled "Computerized Lottery Wagering System" (the "'865 Patent").

The method patented in the '865 Patent "enables a subscriber to place lottery wagers through a telecommunication means, such as a telephone, in one or more available lotteries." <u>Lottotron, Inc. v. GTECH Corp.</u>, No. 05-4562 (FLW), 2007 U.S. Dist. LEXIS 82579, at *2 (D.N.J. Nov. 7, 2007). Using the patented method "an individual accesses the system remotely to enroll with the system by setting up an account and establishing a credit balance for wagering, then selects a lottery game to play, and finally places a lottery wager for the selected game using the balance." <u>Id.</u> at *2-3.

1

Defendant Interactive Systems Inc. ("ISI") operates www.sportsbetting.com, a website that offers online gambling, including a wide variety of casino games.

Lottotron brings a claim for patent infringement against ISI, alleging that ISI infringes on the '865 Patent by offering a "multiple game, on-line wagering format."[1] (Cmplt. ¶ 22) ISI asserts a counterclaim seeking declaratory judgment that ISI did not infringe on the '865 Patent.[2]

## DISCUSSION

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Indiana Hosp., 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. Peters v. Delaware River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

"[A] determination of noninfringement, either literal or under the doctrine of equivalents,

---

[1] Lottotron's suit against ISI was originally captioned Lottotron, Inc. v. Peak Entertainment N.V., et al. (09-6387) and was consolidated with the instant action on May 26, 2010. (Dkt. No. 48)

[2] As set forth on the record at the November 1, 2010 oral argument, ISI has abandoned its counterclaim seeking declaratory judgment that the '865 Patent is invalid. See Nov. 1, 2010 Tr. 53:9-53:16 ("We are not going to be claiming invalidity.").

is a question of fact" and summary judgment is appropriate only if "no reasonable jury could find infringement." Crown Packaging Tech., Inc. v. Rexam Bev. Can Co., 559 F.3d 1308, 1312 (Fed. Cir. 2009).

At issue on ISI's motion for summary judgment[3] is the meaning of the term "wagering format," as used in the '865 Patent.[4] Lottotron and ISI have agreed to be bound by prior claim constructions of the '865 Patent in Lottotron, Inc. v. Scientific Games Corp., No. 03 Civ. 0920 (HB), 2003 U.S. Dist. LEXIS 15507 (S.D.N.Y. Sept. 9, 2003) and Lottotron, Inc. v. GTECH Corp., No. 05-4562 (FLW), 2007 U.S. Dist. LEXIS 82579 (D.N.J. Nov. 7, 2007).

In Scientific Games, a court in the Southern District of New York construed the term "wagering format" to mean "the kind of lottery games that are available, such as Keno, Lotto,

---

[3] ISI contests infringement only on the limited grounds addressed in this motion, namely whether the games offered on ISI's website are the same or the equivalents of the games covered by the '865 Patent. At the November 1, 2010 oral argument, ISI conceded that it does not intend to contest similarities between the processes used in conjunction with its website and any other element of the patent. Nov. 1, 2010 Tr. 53:9-11.

[4] For example, Claim 8 of the '865 Patent reads as follows:

Method for automatically accepting a plurality of different wagering formats over a computer system, comprising:

    receiving incoming communications from prospective wagerers and routing each of said communications according to which one of said plurality of different wagering formats is requested by a subscriber;

    providing a series of messages requesting subscriber wagering information particular to one or more of said plurality of wagering formats;

    requesting identification information from said prospective wagerers; and

    requesting said prospective wagers to enter a wager.

(Butler Decl., Ex. A)

and 3- or 4- digit lotteries." 2003 U.S. Dist. LEXIS 15507, at *8-9 n. 2.

In <u>GTECH</u>, a court in this district adopted that definition "not only because of the New York court's correct analysis, but also because of this Court's independent construction of the term based upon intrinsic evidence."[5] 2007 U.S. Dist. LEXIS 82579, at *17-20.

## I.     LITERAL OR DIRECT INFRINGEMENT

"'Direct infringement requires a party to perform each and every step or element of a claimed method or product.'" <u>Exergen Corp. v. Wal-Mart Stores, Inc.</u>, 575 F.3d 1312, 1320 (Fed. Cir. 2009) (quoting <u>BMC Res., Inc. v. Paymentech, L.P.</u>, 498 F.3d 1373, 1378 (Fed. Cir. 2007)).

"Where the parties do not dispute any relevant facts regarding the accused product...but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment." <u>General Mills, Inc. v. Hunt-Wesson, Inc.</u>, 103 F.3d 978, 983 (Fed. Cir. 1997).

Here, ISI argues that "wagering format," when taken to mean "the kind of lottery games that are available, such as Keno, Lotto, and 3- or 4- digit lotteries," refers to "the types of lottery games available at a physical store where state lottery products are sold." (ISI Opening Br. 10) Lottotron, by contrast, contends that "the kind of lottery games that are available, such as Keno, Lotto, and 3- or 4- digit lotteries," encompasses all games of chance. Lottotron concedes that if

---

[5] The defendant in <u>GTech</u> urged the court to adopt the following construction of the term "wagering format:" a "wagering game in which the outcome of the game determines the outcome of the associated wager." 2007 U.S. Dist. LEXIS 82579, at *17. The construction advocated by Lottotron was the one ultimately adopted by the court, which found that "pursuant to the intrinsic evidence, restricting 'wagering format' to [the construction proposed by defendant] is plainly contrary to the ordinary meaning of the term 'wagering format.'" <u>Id.</u> at *18-19.

ISI's interpretation of "wagering format" is found to be controlling, this Court cannot find literal infringement of the '865 Patent because ISI's website does not offer any state lottery games. See Pltf. Responsive R. 56.1 Stmt. ¶ 32.

"To ascertain the meaning of, or construe, patent claims, the intrinsic evidence of record should be considered first, i.e., the patent itself, including the claims, the specification, and the prosecution history."  General Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 981 (Fed. Cir. 1997).

In considering this intrinsic evidence, courts should not "import limitations into claims from examples or embodiments appearing only in a patent's written description...unless the specification makes clear that 'the patentee...intends for the claims and the embodiments in the specification to be strictly coextensive.'"  JVW Enters. v. Interact Accessories, Inc., 424 F.3d 1324, 1335 (Fed. Cir. 2005) (quoting Phillips v. AWH Corp., 415 F.3d 1303, 1323 (Fed. Cir. 2005)).

Indeed, the Federal Circuit has noted that "[m]uch of the time, upon reading the specification in [] context, it will become clear whether the patentee is setting out specific examples of the invention...or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive. The manner in which the patentee uses a term within the specification and claims usually will make the distinction apparent."  Phillips, 415 F.3d at 1323.

The evidence intrinsic to the '865 Patent supports a finding in ISI's favor, as the use of the term "lottery" throughout the patent makes clear that the intent of the patent holder was to refer strictly to the kinds of games typically available through state lotteries.

The "Background of Invention" statement in the '865 Patent sets forth the following problem, which the patented method is designed to address: "Typically, in the United States in order to play a state lottery either one physically goes to a designated state lottery agent to place a wager, or subscribes to a lottery service that plays daily or weekly their same lottery numbers for a fee." (Friedman Cert., Ex. A, Col. 1) The '865 Patent is designed to make that process more convenient by permitting users of the patented system to place wagers in one or more lotteries remotely.[6]  (Id.)

Similarly, the "Description of the Preferred Embodiments" includes among the information the system is designed to elicit from callers, "the particular state lottery of interest, the particular lottery format of interest, such as 6-Digit lotto, 'Keno,' 3-Digit lotto..." (Friedman Cert., Ex. A, Col. 3)

Additionally, the patent specification explains that when a subscriber is accessing the system from a state in which interstate wagering is allowed, the subscriber will hear a script which "gives the subscriber the option to select one of five options.  The first four options will be the lotteries in close proximity to their state.  The fifth option 'Other States,' will cause the [voice responsive means] to play another script which will allow the subscriber to select from another group of lotteries.  This will continue until the subscriber is given the option to select from any state with a lottery that utilizes the service." (Friedman Cert., Ex. A, Col. 3)

The patent specification goes on to explain that after the subscriber chooses a lottery, the voice responsive means presents the subscriber with the various games available within the

---

[6] In Scientific Games, Lottotron emphasized this purpose in its briefing to the court.  See Friedman Reply Cert., Ex. A.

selected lottery. For example, the system might play a message advising the subscriber to, "[p]ress 3 for 3-digit numbers, press 4 for 4-digit numbers, press 6 for Lotto, press 7 for Keno." (Id.)

The '865 Patent further describes the "Quick Pick" process, indicating that "[d]ifferent state lotteries have variations on the range of numbers which can be selected," so when a caller opts for "Quick Pick," rather than selecting his own numbers to play, "the host first determines the lottery's profile from a master state lottery file, and if the state lottery was in New Jersey, for example, where the range of numbers is from 1 to 48, then it would utilize a random number generating routine to generate unique numbers between 1 and 48 for each game." (Friedman Cert., Ex. A, Col. 7-8)

Lottotron argues that to read these statements in the '865 Patent to support ISI's construction of "wagering format" would be to impermissibly use an example set forth in the patent – state lotteries – to limit the scope of the claims. The use of the term "lottery" within the '865 Patent, however, has made apparent that the intent of the patent holder was to make co-extensive "wagering format" with the types of games on offer through state lotteries. See Phillips, 415 F.3d at 1323.

Moreover, Lottotron "is not entitled to a claim construction divorced from the context of the written description [in the patent]...." Nystrom v. Trex Co., Inc., 424 F.3d 1136, 1144 (Fed. Cir. 2005).

Lottotron argues that the dictionary definitions of "lottery," should be controlling in interpreting the claim construction of "wagering format" set forth by prior courts. However, "heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the

meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." Phillips, 415 F.3d at 1321.

In Nystrom, for example, the Federal Circuit considered claim construction of a patent directed to board used in construction exterior flooring. 424 F.3d at 1139. The district court's construction of the term "board," limited the term to construction material made from wood cut from a log. Id. at 1142. Nystrom acknowledged that some dictionary definitions limit the term "board" to pieces cut from wood but relied on other, broader dictionary definitions in arguing that the "ordinary meaning" of the term "board" encompasses pieces made of many different materials. Id. at 1144. The Federal Circuit affirmed the district court's construction, holding that "in the absence of something in the written description and/or prosecution history to provide explicit or implicit notice to the public – i.e., those of ordinary skill in the art – that the inventor intended a disputed term to cover more than the ordinary and customary meaning revealed by the context of the intrinsic record, it is improper to read the term to encompass a broader definition simply because it may be found in a dictionary, treatise, or other extrinsic source." Id. at 1145 (citing Phillips, 415 F.3d at 1321).

Similarly, Lottotron cannot rely on the dictionary definition of lottery – even if that definition is more commonly in use than the definition the patent holder advocated in Nystrom – to broaden the meaning of prior court's construction of the term "wagering format," which was predicated on the evidence intrinsic to the '865 Patent.[7]

---

[7] Lottotron also argues that if "wagering format" is read to refer exclusively to "lottery games," it would necessarily mean that Claim 8 of the '865 Patent is narrower than dependent Claims 9 and 11. While Lottotron correctly observes that "a claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed," 35 U.S.C. § 112, this problem is inherent in the construction of

In light of this intrinsic evidence, no reasonable jury could find that ISI has literally infringed on the '865 Patent by offering games of chance.

## II.    DOCTRINE OF EQUIVALENTS INFRINGEMENT

Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention."  Warner-Jenkinson v. Hilton Davis Chemical, 520 U.S. 17, 21 (1997).

Put another way, "[t]he doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes."  Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 535 U.S. 722, 733 (2002).

Equivalence exists between elements of the allegedly infringing product or process and the patented invention where, "the differences between the two are 'insubstantial' to one of ordinary skill in the art....[T]he insubstantial differences inquiry may be guided by determining whether the element in the accused device performs substantially the same function in substantially the same way to obtain the same result as the claim limitation."  Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp., 320 F.3d 1339, 1351 (Fed. Cir. 2003) (internal quotations omitted).

### A.    Prosecution History Estoppel

ISI argues that Lottotron is estopped from alleging doctrine of equivalents infringement here based on the prosecution history of the '865 Patent.

---

"wagering format" adopted by prior courts and stipulated to by the parties in the instant action.

"Prosecution history estoppel requires that the claims of a patent be interpreted in light of the proceedings in the [Patent & Trademark Office] during the application process. Estoppel is a 'rule of patent construction' that ensures that claims are interpreted by reference to those 'that have been cancelled or rejected.'" Festo, 535 U.S. at 733 (quoting Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 220 (1940)).

"[W]hen a specification excludes certain prior art alternatives from the literal scope of the claims and criticizes those prior art alternatives, the patentee cannot then use the doctrine of equivalents to capture those alternatives." L.B. Plastics, Inc. v. Amerimax Home Prods., 499 F.3d 1303, 1309 (Fed. Cir. 2007).

ISI argues that Lottotron is estopped here based on a November 1998 amendment to Claim 8 of the '865 Patent which added the phrase "routing each of said communications according to which one of said plurality of different wagering formats is requested by a subscriber." See Nov. 1, 2010 Tr. 11:3-15; Friedman Cert., Ex. J. ISI contends that by not taking the amendment of Claim 8 as an opportunity to tie the term "wagering formats" to games of chance generally, Lottotron forfeited that interpretation of the term. Nov. 1, 2010 Tr. 12:3-6, 13:7-10. ISI concedes that its claim is novel and provided no legal authority, either in its briefs or at oral argument, in support of its position. See Nov. 1, 2010 Tr. 16:7 - 17:16.

The amendment upon which ISI relies was designed to distinguish the method used for taking wagers in the '865 Patent from prior art, specifically a patent involving the taking of bets on horse races. The amendment was in no way addressed to the definition or scope of the term "wagering formats." ISI's suggestion that despite this, Lottotron should have used the amendment to broaden the scope of that term is inconsistent with the definition and purpose of

10

prosecution history estoppel.

### B. Equivalence

In determining whether ISI has infringed upon the '865 Patent under the doctrine of equivalents, the relevant inquiry is whether, in the view of one of ordinary skill in the art, the games offered on ISI's website are "insubstantially different" from the ""the kind of lottery games that are available, such as Keno, Lotto, and 3- or 4- digit lotteries," which are covered by the '865 Patent.  See Boehringer Ingelheim Vetmedica, 320 F.3d at 1351.  ISI has failed to demonstrate that this question can be determined as a matter of law.  See Nov. 1, 2010 Tr. 9:3-15 (conceding that ISI has not made an argument about the equivalence of the relevant games).  A reasonably fact finder might conclude that the games of chance offered on ISI's website are "insubstantially different" from the kinds of lottery games covered by the '865 Patent.  Accordingly, at this stage the question of doctrine of equivalents infringement is not susceptible to a motion for summary judgment and will be left to a jury.

### CONCLUSION

ISI has not directly infringed upon the '865 Patent; however, the question of whether ISI has infringed pursuant to the doctrine of equivalents is a question of fact not susceptible to summary judgment at this stage of the litigation..

**THEREFORE IT IS** on this 15th day of November, 2010,

**ORDERED** that Defendant ISI's Motion for Summary Judgment of Non-Infringement is **GRANTED** as to literal infringement and **DENIED** as to doctrine of equivalents infringement.

The Clerk of the Court is directed to terminate the motion: Docket No. 62.

    /s/ Faith S. Hochberg  
**Hon. Faith S. Hochberg, U.S.D.J.**