**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————————  :

LOTTOTRON, INC.,                              :        Civil No. 09-4942 (FSH)
                                              :
                          Plaintiff,          :
                                              :        **ORDER & OPINION**
          v.                                  :
                                              :
EH NEW VENTURES INC., et al.                  :        Date: February 23, 2011
                                              :
                          Defendants.         :
———————————————————————  :

**HOCHBERG, District Judge:**

This matter comes before the Court on the various pre-trial motions filed by Plaintiff

Lottotron, Inc. and Defendant Interactive Systems Inc. ("ISI"). The Court has reviewed the

parties' submissions pursuant to Fed. R. Civ. P. 78.

## BACKGROUND

Plaintiff Lottotron, Inc. is the owner by assignment of U.S. Patent No. 5,921,865, entitled

"Computerized Lottery Wagering System" (the "'865 Patent").

The method patented in the '865 Patent "enables a subscriber to place lottery wagers

through a telecommunication means, such as a telephone, in one or more available lotteries."

Lottotron, Inc. v. GTECH Corp., No. 05-4562 (FLW), 2007 U.S. Dist. LEXIS 82579, at *2

(D.N.J. Nov. 7, 2007). Using the patented method "an individual accesses the system remotely

to enroll with the system by setting up an account and establishing a credit balance for wagering,

then selects a lottery game to play, and finally places a lottery wager for the selected game using

the balance." Id. at *2-3.

1

Defendant Interactive Systems Inc. ("ISI") operates www.sportsbetting.com, a website that offers online gambling, including a wide variety of casino games.

Lottotron brings a claim for patent infringement against ISI, alleging that ISI infringes on the '865 Patent by offering a "multiple game, on-line wagering format."[1]  (Cmplt. ¶ 22) ISI asserts a counterclaim seeking declaratory judgment that ISI did not infringe on the '865 Patent. On November 15, 2010, we granted ISI's motion for summary judgment in part and denied it in part, finding that ISI had not literally infringed on Lottotron's patent but that issues of fact remained as to infringement under the doctrine of equivalents.

At the close of oral argument on the Motion for Summary Judgment filed by ISI, the parties entered into a stipulation on the record as to a number of the issues remaining in the case.[2] On November 17, 2010, they filed a written stipulation memorializing their earlier agreement. The stipulation make the following provisions:

> 1. Lottotron and ISI stipulate that the "wagering formats" limitation of the asserted claims of the patent in suit means "the kind of lottery games that are available, such as Keno, Lotto, and 3- or 4- digit lotteries."

> 2. The parties' agreement regarding the binding nature of the earlier construction of "wagering formats" renders ISI's affirmative defense of collateral estoppel moot.

---

[1]  Lottotron's suit against ISI was originally captioned Lottotron, Inc. v. Peak Entertainment N.V., et al. (09-6387) and was consolidated with the instant action on May 26, 2010.  (Dkt. No. 48)

[2]  Counsel for ISI stated that his client was "not going to be contesting the way in which the web site works, takes the calls, makes the bets and so forth.  We are not going to be claiming invalidity.  And I think the only issue that will need to be tried, if for some reason Your Honor doesn't dismiss the complaint in its entirety, would be the equivalents issue and the lottery part of it that we had talked about before."  (Tr. 53:9 - 53:16)

3. The parties shall revisit ISI's affirmative defense of prosecution history estoppel once the Court issues its decision on ISI's motion for summary judgment of non-infringement, and ISI reserves its rights to assert same pending the ruling.

4. ISI maintains its affirmative defense and counterclaim of non-infringement. ISI stipulates that the accused www.sportsbetting.com website satisfies all of the limitations of the asserted claims of the patent in suit except: 1) the terms "lottery format," "lottery game format," "lottery game," "lottery ticket," and "lottery" as used in the '865 patent are not the equivalent of the ISI Games; and 2) the ISI Games do not satisfy the "wagering formats" limitation of the asserted claims because they are not "the kind of lottery games that are available, such as Keno, Lotto, and 3- or 4- digit lotteries." Accordingly, the parties stipulate that the only remaining issue to be tried is whether the ISI Games offered on the accused Sportsbetting.com satisfy the "wagering formats" limitation of the asserted claims, construed as "the kind of lottery games that are available, such as Keno, Lotto, and 3- or 4- digit lotteries."

4. ISI hereby withdraws all of its other affirmative defenses and counterclaims.

(Dkt. No. 98)

On November 15, 2010, this Court issued an Order & Opinion granting ISI's motion for summary judgment of literal non-infringement of the '865 Patent and denying the motion as to infringement under the doctrine of equivalents. (Dkt. No. 96)

In anticipation of trial, the parties have filed seven pre-trial motions, as set forth in further detail below. This case will proceed to trial on March 14, 2011.

## DISCUSSION

## I.   MOTIONS TO EXCLUDE EXPERT TESTIMONY

"Under the Federal Rules of Evidence, a trial judge acts as a 'gatekeeper' to ensure that 'any and all expert testimony or evidence is not only relevant, but also reliable.'" Pineda v. Ford Motor Co., 520 F.3d 237, 243 (3d Cir. 2008) (quoting Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997) (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993))).

Federal Rule of Evidence 702, which was amended in response to the Supreme Court's decision in Daubert, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

### A.    Lottotron's Motion to Exclude the Testimony of Melissa Blau

Lottotron moves to exclude the testimony of Melissa Blau, who has been offered by ISI as a remote gaming expert, on the grounds that (1) she is unqualified to testify and (2) her analysis uses the wrong technical and temporal tests for doctrine of equivalents infringement.

Blau has served as an executive in online gaming companies since 2004, most recently as Director of Casino TV, a gaming oriented software platform.  In prior roles, including as CEO of Europa Point Group, she has developed for-profit, online gaming vehicles.  Lottotron challenges Blau's qualifications on the grounds that her experience is on the business side of the online gaming industry, rather than in the fields of programming or system development.  However, Blau's deposition testimony and her expert report make clear that she is conversant in the development and operation of the kind of online-gaming platforms at issue here.[3]  That Blau's experience is as a business executive, not a programmer, goes to the weight of her testimony and

---

[3]  For example, Blau noted repeatedly that she managed and worked closely with teams of programmers and developers.  See Blau Dep. 7:24-8:3, 9:11-25, 38:11-13.  She also spoke knowledgably about the various gaming platforms on which she had worked.  See Blau Dep. 8:24-9:20, 10:2-10:17, 12:23-13:21.

not its admissibility.  See Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996)

("[M]ost arguments about an expert's qualifications relate more to the weight to be given the

expert's testimony, than to its admissibility....Who is 'best' qualified is a matter of weight upon

which reasonable jurors may disagree.").

Lottotron also argues that Blau's testimony should be excluded because she has adopted

the wrong technical and temporal tests for doctrine of equivalents infringement.

Under the doctrine of equivalents, "a product or process that does not literally infringe

upon the express terms of a patent claim may nonetheless be found to infringe if there is

'equivalence' between the elements of the accused product or process and the claimed elements

of the patented invention."  Warner-Jenkinson v. Hilton Davis Chemical, 520 U.S. 17, 21 (1997).

In Warner-Jenkinson, the Supreme Court addressed the question of what test is used to

evaluate equivalence:

> All that remains is to address the debate regarding the linguistic framework under
> which "equivalence" is determined. Both the parties and the Federal Circuit spend
> considerable time arguing whether the so-called "triple identity" test--focusing on
> the function served by a particular claim element, the way that element serves that
> function, and the result thus obtained by that element--is a suitable method for
> determining equivalence, or whether an "insubstantial differences" approach is
> better. There seems to be substantial agreement that, while the triple identity test
> may be suitable for analyzing mechanical devices, it often  provides a poor
> framework for analyzing other products or processes. On the other hand, the
> insubstantial differences test offers little additional guidance as to what might
> render any given difference "insubstantial."
>
> In our view, the particular linguistic framework used is less important than
> whether the test is probative of the essential inquiry: Does the accused product or
> process contain elements identical or equivalent to each claimed element of the
> patented invention? Different linguistic frameworks may be more suitable to
> different cases, depending on their particular facts. A focus on individual elements
> and a special vigilance against allowing the concept of equivalence to eliminate
> completely any such elements should reduce considerably the imprecision of
> whatever language is used. An  analysis of the role played by each element in the

context of the specific patent claim will thus inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element. With these limiting principles as a backdrop, we see no purpose in going further and micro-managing the Federal Circuit's particular word-choice for analyzing equivalence. We expect that the Federal Circuit will refine the formulation of the test for equivalence in the orderly course of case-by-case determinations, and we leave such refinement to that court's sound judgment in this area of its special expertise.

Warner-Jenkinson Co., 520 U.S. at 40.

Blau has employed the "triple identity test" – more commonly referred to in the case law as the "function - way - result test."  Relying on the Supreme Court's statement that this test is "a poor framework" for analyzing non-mechanical devices, Lottotron contends that Blau's testimony should be excluded because she has used the test where only a non-mechanical claim limitation – the wagering formats limitation – is at issue.  However, the '865 Patent as a whole provides the context for the wagering formats limitation, and the Patent sets forth a computer gaming system.  These types of systems can be analyzed using the "function - way - result test."  See e.g., Sun Microsystems, Inc. v. Network Appliance, Inc., 690 F. Supp. 2d 1027 (N.D. Cal. 2010) (applying the "function - way - result test" to a patented "method of verifying the integrity of data and correcting errors on [electronic] storage media in a data storage subsystem"); Nash v. Microsoft Corp., No. 03 Civ. 1667 (KMH), 2005 WL 5912091 (S.D. Tex. April 1, 2005) (applying the "function - way - result test" to a patent describing "a system and method for detecting and locating improper or illicit use of digitized information").  Accordingly, Blau's use of the "function - way - result test" is admissible, without excluding other possible approaches used by other experts.  To the extent Lottotron wishes to argue that the test is not particularly helpful in analyzing the particular claim limitation at issue in the instant action, that argument

goes to the weight of Blau's testimony and may be tested on cross examination and evaluated by the jury.

In <u>Warner-Jenkinson</u>, the Supreme Court also noted that, "[i]nsofar as the question under the doctrine of equivalents is whether an accused element is equivalent to a claimed element, the proper time for evaluating equivalency – and thus knowledge of interchangeability between elements – is at the time of infringement, not at the time the patent was issued."  520 U.S. at 37.

In her expert report, Blau writes that she has assessed the '865 Patent "as a person skilled in the art *at the time the patent was issued*."  (Lottotron <u>Daubert</u> Br., Ex. A at 17) (emphasis in the original).  Clearly, then, Blau has adopted the wrong temporal standard for evaluating doctrine of equivalents infringement.  Her analysis should address the patent and potential infringement at the time of infringement, as set forth in <u>Warner-Jenkinson</u>.  Lottotron seeks to exclude Blau's testimony as a result of this error.  However, Blau testified at her depositionthat timing was "not an important [supposition] in formulating" her opinion.  (ISI <u>Daubert</u> Opp. Br., Ex. D at 136)  As a result, Blau's testimony is excluded only to the extent that she has employed the wrong temporal standard – and the use of that temporal standard was a necessary part of her analysis – in reaching her conclusion.  If Blau could have reached the same conclusion using the correct temporal standard, her analysis is admissible.  In light of Blau's testimony at her deposition that the temporal standard did not play an important role in her analysis, this Court concludes that there is no substantial unfairness in this result.

**B.     ISI's Motion to Exclude the Testimony of Stacy Friedman**

ISI moves to exclude the testimony of Stacy Friedman on the grounds that he has adopted methods of evaluating doctrine of equivalents infringement that are not sufficiently reliable to

satisfy the requirements set forth in <u>Daubert</u> and codified in Fed. R. Evid. 702.

Friedman adopts two tests for evaluating whether the games offered on ISI's website are equivalent to the "wagering formats" in the '865 Patent: (1) whether a game is known to have been offered by a lottery and (2) whether a game is mathematically equivalent to Keno, Lotto, and 3- or 4- digit lotteries.

The first of these tests – whether a game has been offered by a lottery – is not, on its own properly the subject of expert testimony because it does not involve "scientific, technical, or other specialized knowledge.".  <u>See</u> Fed. R. Evid. 702.  However, to the extent Friedman intends to use this test to augment a mathematical analysis of whether games offered on ISI's website are substantially the equivalent of Keno, Lotto, and 3- or 4- digit lotteries, his testimony will be permitted.

Testimony regarding the second of Friedman's tests will also be admitted.  In addressing the mathemtical equivalence of various games, Friedman breaks those games down into their component parts and compares those parts according to mathematical principles.[4]  ISI does not contest that Friedman is qualified to offer opinions along these lines, and this Court is satisfied that the analysis set forth in Friedman's expert report and during his deposition testimony is based upon sufficient facts regarding the various games at issue and is sufficiently reliable to be

---

[4]  Friedman sets forth four steps that make up Keno, Lotto, and 3- or 4- digit lotteries: "1) the player makes a wager that a game outcome to be determined after the wager will match a desired outcome from the list of possible outcomes, 2) the game outcome is randomly determined according to the discrete random variable, 3) the player's wager is evaluated for a win or loss according to predetermined rules which typically require that the randomly-determined outcome and the desired outcome match or correspond in some way, and 4) if the player wins then the wager is paid at predetermined payout odds (which may differ based on the type of win, for games that have more than one winning outcome."  (ISI Daubert Br., Ex. C at 9)  He then compares those steps to those involved in the games offered on ISI's website.

8

admissible.  ISI is free to challenge how accurate or useful Friedman's mathematical equivalence test is at trial, and the jury may evaluate those arguments in weighing Friedman's testimony.

ISI also seeks to exclude Friedman's testimony to the extent it relates to statements of patent examiners during Friedman's own experience as a patentee.  Lottotron does not contest that statements made by patent examiners to Friedman constitute hearsay.  Instead, Lottotron relies on Federal Rule of Evidence 703[5] to argue that these hearsay statements are admissible in this matter.  While this rule may permit Friedman to rely on the patent examiners' statements in reaching his expert opinion – if Lottotron can meet its burden to show outside the presence of the jury that such statements are reasonably relied upon by experts in the field – it does not permit him to testify to such hearsay statements before a jury.  The probative value of the patent examiners' statements – taken out of contex, from unrelated patent prosecutions, and without any method of verifying their accuracy – is severely limited.  It does not outweigh the confusion and potential prejudice that would result from the introduction of the statements.  Any testimony recounting these hearsay statements will be excluded.

ISI also moves to exclude Friedman's testimony to the extent it relies on evidence or data occurring after expiration of the '865 Patent on March 6, 2010.  The only example proffered by ISI is Friedman's analysis of the state lottery system offered in Quebec.  Lottotron avers that it does not intend to offer evidence about the Quebec lottery system.  As a result, this portion of

---

[5]  The rule provides that "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their  prejudicial effect."  Fed. R. Evid. 703.

ISI's motion is moot.[6]

## II.  MOTIONS IN LIMINE

### A.  Lottotron's Motion To Exclude Evidence on Claim Limitations Other Than "Wagering Format"

The parties have stipulated "that the only remaining issue to be tried is whether the ISI Games offered on the accused Sportsbetting.com satisfy the 'wagering formats' limitation of the asserted claims."  In light of that stipulation, Lottotron seeks to exclude any evidence addressing claim limitations in the '865 Patent other than the "wagering formats" limitation.

Doctrine of equivalents infringement involves "[a]n analysis of the role played by each element in the context of the specific patent claim," which informs the inquiry as to whether a "substitute element" plays an equivalent role.  Warner-Jenkinson, 520 U.S. at 39-40.  ISI may introduce evidence as to other claim limitations in an effort to provide context for the "wagering format" limitation that is at issue.  However, Lottotron may propose a limiting instruction.  Such limiting instruction shall be discussed in advance of its proposal to the Court with opposing counsel and should be presented in the proposed jury charge according to the schedule set below.

### B.  Lottotron's Motion To Exclude Evidence of this Court's Decision on Literal Infringement

Lottotron also seeks to exclude any reference to this Court's November 15, 2010 decision granting summary judgment in favor of ISI on the issue of literal infringement.  The standards for literal infringement and doctrine of equivalents infringement are independent, and the jury need not be aware of this Court's holding with regard to literal infringement in order to evaluate the

---

[6]  ISI may renew its objection at trial if Friedman impermissibly relies on evidence occurring after the expiration of the '865 Patent.

10

evidence that will be offered at trial.  See Warner-Jenkinson, 520 U.S. at 21 (noting that under

the doctrine of equivalents, "a product or process that does not literally infringe upon the express

terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the

elements of the accused product or process and the claimed elements of the patented invention.").

While the jury charge in this case will likely include a reference to literal infringement in

order to put the doctrine of equivalents infringement inquiry in context, the introduction of this

Court's judgment in favor of one side on the issue would be both unneccessary and prejudicial.

Accordingly, the parties are precluded from offering evidence regarding this Court's November

15, 2010 summary judgment ruling.  As set forth at the conclusion of this Opinion & Order, the

parties will be required to meet and confer to jointly propose an acceptable jury charge that

addresses, inter alia, the fact that literal infringement is not at issue in this case.

### C.     ISI's Motion To Exclude Testimony Regarding Scratch Games

ISI moves to exclude testimony regarding "scratch games," precluding Lottotron from

attempting to prove infringement based on ISI's offering such games on its website.  Scratch

games are those in which the player reveals hidden symbols on a card in order to determine if he

has won.  ISI's motion relies on the disclosure-dedication rule.[7]  "Application of the

disclosure-dedication rule is a question of law...."  Pfizer, Inc. v. Teva Pharms.USA, Inc., 429

F.3d 1364, 1378 (Fed. Cir. 2005).  ISI's application should have been made at the summary

---

[7]  The rule provides that "subject matter disclosed but not claimed in a patent application is dedicated to the public....This rule [] applies equally to prevent a finding of infringement under the doctrine of equivalents.  A patentee may not narrowly claim his invention and then, in the course of an infringement suit, argue that the doctrine of equivalents should permit a finding of infringement because the specification discloses the equivalents."  Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1106-07 (Fed. Cir. 1996) (internal quotations omitted).

judgment stage of this litigation.  It is not a straightforward evidentiary question, but rather presents a legal argument for partial summary judgment which, if granted, would then render such evidence inadmissible.  ISI not having presented this legal analysis in a motion for partial summary judgment, it is inappropriate for decision on a motion in limine.  Accordingly, ISI's motion is denied.[8]

> ### D.   ISI's Motion To Bar Testimony That Specific Casino
> ### Games are the Basis for Liability Rather than Game Type

The parties' stipulation provides that "the only remaining issue to be tried is whether the ISI Games offered on the accused Sportsbetting.com satisfy the 'wagering formats' limitation of the asserted claims, construed as 'the kind of lottery games that are available, such as Keno, Lotto, and 3- or 4- digit lotteries.'" ISI now moves to clarify that the jury must find that two game types, as opposed to two individual games, must satisfy the wagering formats limitation in order to reach a verdict for Lottotron.

ISI offers what it terms "reskins" of many games.  These are games of a certain type that use the same algorithm and run the same way but feature different graphics or themes.  For example, ISI appears to offer several variations of blackjack – Blackjack Switch, Spanish Blackjack and Blackjack Super 7's – all of which are essentially the same game dressed up differently.  ISI argues that even if the jury found multiple blackjack games on its website infringing, that would be insufficient to reach a verdict for Lottotron because only one game type is involved.

---

[8]  As a result, the standard applied to evidence regarding scratch games will be the same as that applied to evidence regarding any other game offered on ISI's website.  Such evidence will be admitted only to the extent that it is used to demonstrate that the game offered by ISI is substantially equivalent to games such as Keno, Lotto, and 3- or 4- digit lotteries.

ISI offers no clear support for its position, arguing mainly that the parties have generally referred to game types, and not specific games by name, throughout the litigation.  However, the parties' stipulation provides that the issue for trial "is whether the ISI Games offered on the accused Sportsbetting.com" infringe.  The use of the term "games," rather than an alternate phrase like "types of games," indicates that ISI's motion is without foundation.  Moreover, even the stipulated definition of the term "wagering formats," offers multiple examples of the same type of game: Keno, Lotto and 3- or 4- digit lotteries are all of the pick "pick-n" game variety.

While there is no basis for this Court to grant ISI's motion at this time, the parties are directed to prepare, by the date set forth below, special interrogatories to be submitted to the jury with the verdict sheet.  These interrogatories should provide a mechanism by which this Court and the parties may determine which games by name the jury has found to be infringing.  Should the issue of individual game versus game type be relevant to the final verdict in this matter, ISI may renew its application.

### E.    ISI's Motion To Bar Testimony Regarding Its Revenues

Finally, ISI moves to exclude evidence of its revenues.  Lottotron has included among its proposed exhibits a summary of ISI's revenues from 2008 through 2010,[9] which it intends to offer as circumstantial evidence that certain games were offered on ISI's website during the relevant time period.

Damages are not at issue in this case.[10]  The summary of ISI's revenues is ill-suited to

---

[9]  The exhibit is PX12.

[10]  The parties have entered into a confidential stipulation regarding damages which will govern the issue should the jury find liability.

demonstrate that certain games were offered by ISI's website and its introduction would be prejudicial to ISI.  Accordingly, Lottotron will be precluded from offering evidence or testimony regarding ISI's revenues.  If Lottotron can demonstrate that the use of the revenue summary is necessary to prove that certain games were offered by ISI's website, they may make an application to this Court at trial for permission to offer a redacted spreadsheet that does not include revenue information.

## **CONCLUSION**

For the reasons set forth above,

 **IT IS** on this 23rd day of February, 2011,

**ORDERED** that Lottotron's Motion to Exclude the Testimony of Melissa Blau is **GRANTED** in part and **DENIED** in part;[11] and it is further

**ORDERED** that ISI's Motion to Exclude the Testimony of Stacy Friedman is **GRANTED** in part and **DENIED** in part;[12] and it is further

**ORDERED** that Lottotron's Motion to Exclude Evidence on Claim Limitations Other Than "Wagering Format" is **DENIED**; and it is further

**ORDERED** that Lottotron's Motion to Exclude Evidence of this Court's Decision on Literal Infringement is **GRANTED**; and it is further

**ORDERED** that ISI's Motion to Exclude Testimony Regarding Scratch Games is **DENIED**; and it is further

---

[11]   Blau's testimony is excluded only to the extent that her analysis is dependent upon use of an incorrect temporal standard for evaluating doctrine of equivalents infringement.

[12]   Friedman is precluded from testifying as to the hearsay statements of patent examiners in unrelated patent prosecutions.

**ORDERED** that ISI's Motion to Bar Testimony That Specific Casino Games are Basis for Liability Rather than Game Type is **DENIED**; and it is further

**ORDERED** that ISI's Motion to Bar Testimony Regarding Its Own Revenues is **GRANTED**; and it is further

**ORDERED** that the parties meet and confer and jointly submit a proposed jury charge, verdict sheet and special interrogatories by **March 7, 2011**.[13]

The Clerk of the Court is directed to terminate the motions: Docket Nos. 101, 113, 114, 116, 122, 123, 124.

_____/s/ Faith S. Hochberg_____
**Hon. Faith S. Hochberg, U.S.D.J.**

---

[13]  To the extent the parties disagree about elements of the proposed jury charge, verdict sheet and special interrogatories, they are directed to submit a three column chart outlining (1) Plaintiff's proposal, (2) Defendant's proposal, and (3) the key differences between the two.